IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

PATRICIA ANN MCCOY,

        Plaintiff,

    v.

NATURAL SELECTION FOODS,
LLC, a California corporation;
NATURAL SELECTION FOODS
MANUFACTURING, LLC, a California
Corporation; and DOLE FOOD
COMPANY, INC., a Delaware corporation,
MISSION ORGANICS, LP/LLC, a California
Corporation;

        Defendants.

Case No.:

FIRST AMENDED
COMPLAINT
& JURY DEMAND

COMES NOW the plaintiff PATRICIA MCCOY, by and through her attorneys of record, MARLER CLARK, LLP, PS and UNDERBERG & KESSLER LLP, and alleges as follows:

## PARTIES

1.1    The plaintiff Patricia McCoy is a resident of Pittsford, New York. The plaintiff resides within the jurisdiction of this Court.

1.2    The defendant Dole Food Company, Inc. ("Dole") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, on information and belief, in the State of California. The defendant is, therefore, a foreign corporation and not a resident of the State of New York. Further, the defendant is authorized to do, and in fact does, business in the State of New York.

1.3    The defendant Natural Selection Foods, LLC, is a corporation organized and

existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods, LLC, is, therefore, a foreign corporation and not a resident of the State of New York. Further, the defendant Natural Selection Foods, LLC, is authorized to do, and in fact does, business in the State of New York.

1.4    The defendant Natural Selection Foods Manufacturing, LLC, is a corporation organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods Manufacturing, LLC, is, therefore, a foreign corporation and not a resident of the State of New York. Further, the defendant Natural Selection Foods Manufacturing, LLC,[1] is authorized to do, and in fact does, business in the State of New York.

1.5    The defendant Mission Organics, LP/LLC (Mission Organics) is a corporation organizing and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Mission Organics is therefore a foreign corporation and not a resident of the State of New York. Defendant Mission Organics provides its products to regional and national distributors, including Natural Selection Foods, LLC; and Natural Selection Foods Manufacturing, LLC with the expectation that those entities will distribute Mission Organics' spinach to a multi-state area, including New York. Mission Organics has thus conducted business in New York and purposely reaped the benefits of the laws of New York.

**JURISDICTION AND VENUE**

2.1    This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is

---

[1]    Defendants Natural Selection Foods, LLC, and Natural Selection Foods Manufacturing, LLC, will hereinafter be referred to, collectively, as "Natural Selection."
C:\Documents and Settings\PVN\Local Settings\Temporary Internet Files\OLK1\00019755.DOC

2

between citizens of different states, and because the defendants each have certain minimum contacts with the State of New York such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2    Venue in the United States District Court for the Western District of New York is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

### Prior Outbreaks

3.1    *E. coli* O157:H7 outbreaks associated with lettuce or spinach, specifically the "pre-washed" and "ready-to-eat" varieties sold under various brand and trade names, are by no means a new phenomenon. In October 2003, 13 residents of a California retirement center were sickened and 2 died after eating *E. coli*-contaminated "pre-washed" spinach. In September 2003, nearly 40 patrons of a California restaurant chain became ill after eating salads prepared with bagged, "pre-washed" lettuce. In July 2002, over 50 young women were stricken with *E. coli* at a dance camp after eating "pre-washed" lettuce, leaving several hospitalized, and 1 with life-long kidney damage. The Center for Science in the Public Interest found that of 225 food-poisoning outbreaks from 1990 to 1998, nearly 20 percent (55 outbreaks) were linked to fresh fruits, vegetables or salads.

3.2    Even more recently, though—September 2005—the defendant Dole's pre-washed lettuce was the cause of a large *E. coli* O157:H7 outbreak in Wisconsin, Minnesota, and Oregon. Health authorities involved in the investigation of last fall's Dole *E. coli* outbreak estimated that as many as 244,866 bags of potentially contaminated lettuce made it

to market. Many people were critically injured.

### Patricia McCoy's Injuries

3.3    Patricia McCoy purchased a package of Dole brand baby spinach on or about August 21, 2006, from a Martin's Super Market in Perinton, New York. She consumed the spinach in salads on several occasions between August 22 and August 29.

3.4    The evening of Thursday, August 31, 2006, Patricia McCoy began to experience intense gastrointestinal symptoms including abdominal cramps and diarrhea. Her symptoms worsened, and on September 1 or 2, 2006, Ms. McCoy's stools turned bloody.

3.5    The evening of September 3, 2006, Ms. McCoy's primary physician advised her to seek medical attention at the emergency department at Highland Hospital. Ms. McCoy received intravenous fluids and underwent various diagnostic procedures, including giving a stool sample, and she was discharged late the same night.

3.6    Ms. McCoy's symptoms continued after discharge from Highland Hospital's emergency department. They included bloody diarrhea, abdominal cramps, headache, fatigue, and nausea.

3.7    Symptoms began to resolve after about a week of illness, and Ms. McCoy continues to recover from her infection. She learned that her stool culture was positive for E. coli O157:H7 on or about September 7, 2006. Ms. McCoy thereafter learned that the strain of bacteria found in her stool sample matched the strain associated with the outbreak caused by defendants' spinach.

### CAUSES OF ACTION

### Strict Liability—Count I

4.1    At all times relevant hereto, the defendants were manufacturers and sellers of the adulterated food product that is the subject of the action.

4.2.    The adulterated food product that the defendants manufactured, distributed, and/or sold was, at the time it left the defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained *E. coli* O157:H7, a deadly pathogen.

4.3    The adulterated food product that the defendants manufactured, distributed, and/or sold was delivered to the plaintiff without any change in its defective condition.  The adulterated food product that the defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiff.

4.4    The defendants owed a duty of care to the plaintiff to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health.  The defendants breached this duty.

4.5    The defendants owed a duty of care to the plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer.  The defendants breached this duty.

4.6    Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendants manufactured, distributed, and/or sold.

## Breach of Warranty—Count II

4.7    The defendants are liable to the plaintiff for breaching express and implied warranties that they made regarding the adulterated product that Ms. McCoy purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use.  Specifically,  the defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and

agents, that the food they prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

4.8    Plaintiff alleges that the *E. coli*-contaminated food that the defendants sold to plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.9    Plaintiff alleges that the *E. coli*-contaminated food that the defendants sold to plaintiff was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.10    As a direct and proximate cause of the defendants' breach of warranties, as set forth above, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence—Count III

4.11    The defendants owed to the plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of their food product, which duty would have prevented or eliminated the risk that the defendants' food products would become contaminated with *E. coli* O157:H7 or any other dangerous pathogen. The defendants breached this duty.

4.12    The defendants had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent. The plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.13    The defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure their respective employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture,

distribution, storage, and sale of similar food products, but the defendants failed to do so and were therefore negligent.

4.14 The defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendants failed to do so and were therefore negligent.

4.15 As a direct and proximate result of the defendants' acts and omissions of negligence, the plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence Per Se—Count IV

4.16 The defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*).

4.17 The defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, and sale of food adulterated with *E. coli* O157:H7, a deadly pathogen.

4.18 As a direct and proximate result of conduct by the defendants that was negligent *per se*, the plaintiff sustained injury and damages in an amount to be determined at trial.

### DAMAGES

5.1 The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not

C:\Documents and Settings\PVN\Local Settings\Temporary Internet Files\OLK1\00019755.DOC

limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

6.1     The plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against the defendants as follows:

A.     Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendants' conduct;

B.     Awarding plaintiff her reasonable attorneys fees and costs, to the fullest extent allowed by law; and

C.     Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: February_____, 2007.          **MARLER CLARK, LLP, PS**

William D. Marler, Esq. WSBA #17233
6600 Bank of America Tower
701 Fifth Avenue
Seattle, WA  98104
Telephone:  (206) 346-1888
Attorneys for Plaintiff

**UNDERBERG & KESSLER LLP**

/s/ Paul V. Nunes
Paul V. Nunes, Esq.
Attorneys for Plaintiff
300 Bausch & Lomb Place
Rochester, New York  14604
(585) 258-2800

C:\Documents and Settings\PVN\Local Settings\Temporary Internet Files\OLK1\00019755.DOC